I am Bruce Davidson here presenting for appellants. The case comes before the court on the disposition of cross motions for summary judgment. We began that process shortly after the case was removed from the DuPage County Circuit Court. We moved on a number of grounds for state and under state and federal law for partial summary judgment on liability only issues. On cross motion, the defendants attacked the complaint asserting that... Mr. Davidson, when did federal law start requiring all politicians to be polite to each other? That's what the complaint alleges, that other elected politicians were not polite to your client. When did law start requiring politeness in politics? Usually the Supreme Court refers to political dialogue as free, uninhibited, robust, and wide open. And what you're arguing is that federal courts supervise the quality of political dialogue. When did that happen? Number one, we didn't bring the action in federal court. But you asserted the 1983 claim. Yes, right. So that says you've got a federal law right to damages. Right. Your Honor, this isn't about dialogue between politicians. That's exactly what it is. One politician called another politician mean, spirited, and rude. Right. It's pretty easy to imagine Senator Schumer calling Senator McConnell mean, spirited, and rude, or the reverse. And in fact, I would be shocked if that hadn't happened in both directions. And so we would then have cross litigation with one senator suing the other, saying, I'm not mean, spirited, and rude. I might be rude, but I'm not mean, spirited. That strikes me as so implausible a role for the federal judiciary that I'm asking when it began. So you would presumably, in response to my question, give me the case where the federal courts started saying, we're going to supervise the quality of statements politicians make to each other. I don't think this was a statement one politician was making to another. The statement mean, spirited, and rude is a statement. And everybody involved in this litigation is a politician. They're either elected or they're appointed. It wasn't the making of the statement. It was the imposition of a process. All right. I take it you're not going to answer my question. I asked you when this began. Show me when this began. Can you do that? No, I'm conceding absolutely that. So what we've got is the first time in the history of the republic that you're asking a federal court to start supervising the quality of the statements politicians make to each other. How is that consistent with the Supreme Court's statement that political debate is supposed to be free, uninhibited, robust, and wide open? Your Honor, if this was political debate, it would be, I would have to absolutely agree with you. It was not. It was the imposition of a process to make an adjudication about conduct. It wasn't an expression of an opinion about you are mean. The statement you are mean, spirited, and rude is nothing but an opinion. It wouldn't be actionable under state and libel law precisely because it's an opinion. So you've got something that wouldn't be actionable as libel or slander. But you think nonetheless violates the Constitution of the United States. And you concede that in the history of the United States you have no precedent to support it. That's a pretty serious problem. If this was a statement of one board member's opinion about another's being rude, I would say that you're absolutely correct. But it wasn't. It was the imposition of a process. It was a start under this uniform grievance procedure, a convening of a forum, as it were, to make an adjudication, in which she's continually being held up and saying, here, we've held a hearing. So it's the process in which conflicting views are heard that violated your rights. It was the purport of the proceeding that they were making adjudications. This wasn't about opinion. So let me ask a little bit differently. Sure. You're asserting a due process claim. Yes, sir. Procedural due process claim. That the process violated your client's rights. Right. Fourteenth Amendment applies to deprivations of life, not at issue here. No, I don't think so. Property, not at issue here. No. Liberty? Yes, sir. What deprivation of liberty was imposed by the school board? Well, we did define it in the briefs, but essentially what the Supreme Court said is that the individual has the right to expect, under the Fourteenth Amendment, that he will be dealt with fairly during the process. What deprivation of liberty was imposed on your client? Right. So what we're saying when the Supreme Court said that, it created the liberty to feel that the government is dealing with you fairly when it imposes a procedure on you. So that's liberty. Mr. Davidson, can you cite a case where a plaintiff was allowed to pursue a due process claim, where the only protected interest is the feeling of just treatment by the government? I mean, it seems to me, as it does to my brothers, that in every case cited, any case that you could cite, there's also the well-recognized protectable interest in life, liberty, or property. I can't possibly see that here. Well, again, the liberty is to feel that the government is dealing with you fairly. That's in the Kerry case, and in fact, I think the Kerry case, and your own case in Alston v. King, demonstrate what you're talking about, that I think as judgment is entered by the Supreme Court in Kerry, they're saying they may have no property interest in the education because they may have well been properly suspended, but they do have an interest in fair procedure. And so judgment will be entered on that, at least in nominal damages. The students in Kerry were facing suspension, correct? They had been suspended, yes. Right. And it's pretty clear that that involves a protected liberty interest if it involves more than 10 days of suspension, right? Well, it does, but there's no action if the suspension was justified. Exactly. If it was not justified. But the foundation of the Kerry case is that those plaintiffs had been deprived of a protected liberty interest. It turned out that there was a perfectly legitimate reason for doing so. That's why they only got the possibility of nominal damages. Right, right. But they were, in fact, deprived of something that the Supreme Court recognizes as a liberty interest. I don't see that in your case. Well, by the time judgment enters in the U.S. Supreme Court, the property interest is still up in the air. It's unresolved. But they do say that regardless of property interest, the property interest in the education was unresolved. Mr. Davidson, could Mrs. Manley have been forced from her position on the school board solely as a result of the process at issue here? Well, as it turns out, that's a general opinion, but the emails that began this process did ask for her removal from the board, either through a forced resignation or for a vote from the board. So when this process began, her seat on the board was at stake, even though it was later determined that that probably was not a possibility. But the procedure was instituted, among other things, for the purpose. Look, the only result here was that letter, it seems to me. She retained her position at that time. No, Your Honor, I have to disagree. What came as a result was that she suffered emotional distress because of the imposition, the involuntary imposition, of a procedure that was unfair. She was held up, as Mr. Alston was, she was held up for humiliation in a program in front of the community. In fact, we put on a DVD, we put some audience communication segments on there showing this pitchforks-and-torches atmosphere surrounding this procedural hearing. But, I mean, I don't see any evidence in the record that she was subjected to anything but an investigative process. I don't see where it was adjudicative. And if you can help me with that, that would be great. Well, the Hanna case talks about what's an investigation, and that's the Human Rights Commission. And Judge Frankfurter, Justice Frankfurter pointed out that it's oriented toward policy. So if the Board of Education had convened a committee to look into the propriety of distributing campaign literature on campus, had looked at everybody's behavior and made a report on that, you could call that a Hanna investigation. But if it's directed at the individual, then it's an adjudication. And this clearly was. The emails that instituted the process were about her. All the adjudication, the hearing, was about her conduct. Well, sure, it was an investigation into her conduct. Well, it began with complaints. It had an investigation. It had a conclusion, a fact-finding aspect to it. Investigation is used in the terms of Hanna, at least as Frankfurter explains it, is an investigation into policy, the application of policy. And that was not the point of this proceeding. It was an adjudication of her conduct as an individual. As I understand, Hanna, that is a distinction between an investigation and an adjudication. Well, I just cannot see that she could have been forced from her position on the school board solely as a result of the process that went on. You could be right, Your Honor. But she was subjected to a procedure that caused her emotional distress. And we think under the Kerry case, that invades a liberty interest as we've defined it in the briefing. And that she's entitled either to nominal damages under the Kerry case or perhaps, as you illustrate in Alston, to seek compensatory damages. Thank you, Mr. Davidson. Thank you, Judge. Mr. Swain. Good morning. Good afternoon. May it please the Court, my name is Robert Swain. I'm here this afternoon representing the defendants, Dr. Bruce Law and the Board of Education of Hinsdale Township High School District Number 86. Quite poignantly to the point, I think the problem with this case from the outset is that there has never been alleged, or in fact there never was, any deprivation of any protected interest here on behalf of, frankly, either of the plaintiffs. And I think many of my points have been elucidated here by the questioning already. I think it's clear there was no property interest at stake. We've conceded, of course, that Ms. Manley, a selected official, had a property interest in her scene on the school board. But it's also clear under the Illinois school code that the only process to remove a school board member runs not through the school board itself, but through the county level regional superintendent of schools, which of course is not the process that was involved here. As to liberty interests, I think it's very clear that we don't have any kind of reputational injury rising to a stigma plus test. And that the very notion of some liberty to be free from emotional distress essentially turns the analysis backwards. That it's not damages, the suffering of damages, the suffering of emotional distress that creates a due process violation, but it must be a preexisting liberty interest, which has been deprived, which implicates due process in the first instance. And of course, all of the cases, Carrier v. Pifus, Olson v. King, Hinkle v. White, and so forth, cited in the party's briefs, all involve actual deprivations. And if Ms. Manley was quite concerned about ridicule and public oppobrium from being put through this process, I think it's quite telling to compare her experience as Sheriff Hinkle in Hinkle v. White, who of course was publicly denounced as being a molester of his stepdaughter, and potentially even being an arsonist, all through state action. But without any actual alteration to legal status or any actual deprivation of a protected right, was found not to have suffered any deprivation of due process for want of a protected interest. There are, of course, several subsidiary issues that we run through in our briefs, but in the absence of any deprivation here that implicate due process, I think, frankly, no further analysis is necessary. Okay. I hear no questions. Thank you very much. Thank you.